BELFAST SAVINGS BANK *vs.* WILLIAM K. LANCEY.

Waldo.    Opinion January 2, 1900.

*Attachment.    Bankruptcy.    Insolvent Estate.    R. S., c. 81, § 68 ; Stat. 1875, c. 39 ; 1876, c. 143.*

In an action upon the defendant's promissory notes, it appeared that the suit was commenced November 11, 1876, and the defendant's real estate was attached upon the writ.   More than four months after the attachment of real estate, the defendant filed his petition in bankruptcy,—he was duly adjudged a bankrupt, and subsequently received his discharge.   An assignee was appointed, who, in pursuance of a license granted by the U. S. District Court, sold the real estate attached upon the writ in this action, subject to such attachment.   The action was continued from term to term until the January term, 1899, when the plaintiff filed a motion setting out the facts and asking that it might have a special judgment for the amount found due upon the notes in suit and execution against the property attached upon the writ

But prior to this the defendant had died, letters of administration had been duly granted upon his estate, and his estate had been duly adjudged and decreed insolvent, and commissioners in insolvency appointed.

*Held;* that notwithstanding the fact that the real estate attached upon the writ had passed to the defendant's assignee in bankruptcy, and had been sold by him, subject to the attachment, the plaintiff's attachment had been dissolved, according to the provisions of R. S., c. 81, § 68, by the decree of insolvency on the estate of the defendant before a levy or sale on execution; and that consequently the plaintiff is not entitled to a special judgment against the property attached upon the writ.

## On Report.

This was an action of assumpsit on two promissory notes of $2000 each, dated February 15, 1875, given to the plaintiff by W. K. Lancey, and which, with other notes amounting in all to $10,000 were secured by mortgage of real estate in the city of Augusta, Kennebec county. The action was defended by the administrators of said Lancey's estate, who pleaded several defenses : (1) that the notes have been paid; (2) that the discharge of said Lancey in bankruptcy under the act of March 2, 1867, was a bar; (3) that said Lancey's death and the representing of his estate insolvent in the probate court, followed by the issuing of a commission in insolvency, had dissolved an attachment of all of said Lancey's real estate in Somerset county, made by the plaintiff more than four months prior to the proceedings in bankruptcy, and which attachment the plaintiff sought to enforce by a judgment in rem.

The facts are stated in the opinion.

*R. F. and J. R. Dunton,* for plaintiff.

If the mortgage was not foreclosed there can be no question but that, so far as this branch of the case is concerned, there should be judgment for the full amount of the notes in suit and interest.

If the mortgage was legally foreclosed there would be a little more than eight hundred dollars due on the mortgage debt, after deducting the value of the real estate, as found by the jury, at the time when the right of redemption expired; and in that case special judgment against the property attached should be rendered for this balance.

'It has been held in three cases under the statute, as it existed at the date of the attempted foreclosure in this case, that a certificate of the register that the notice was published in a newspaper "published" in the county where the premises are situated does not show a compliance with the statute which required public notice be given in a newspaper "printed" in the county where the premises are situated, and that a record of such notice and certificate does not foreclose the mortgage. *Blake* v. *Dennett*, 49 Maine, 102; *Bragdon* v. *Hatch*, 77 Maine, 433 ; *Hollis* v. *Hollis*, 84 Maine, 96.

There is also another fatal defect in this attempted foreclosure. The statute (c. 90, § 5) requires the mortgagee to "cause a copy of such printed notice, and the name and date of the newspaper in which it was last published to be recorded in each registry of deeds in which the mortgage deed is, or by law ought to be, recorded, within thirty days after such last publication." It appears by the certificate that the third publication of said notice was in the paper bearing date December 1, 1876, while the certificate states that the notice was received and copied November 30, 1876, or the day before the last publication of the notice. Parol evidence is not admissible to show that in fact the paper issued two days before its date. The validity of the foreclosure must stand or fall by the record alone, otherwise there can be no certainty as to the title under a mortgage and its foreclosure. *Morris* v. *Day*, 37 Maine, 386; *Chase* v. *Savage*, 55 Maine, 543.

The plaintiff is entitled to a special judgment, to be enforced against the property attached, and not against the person or other property of the defendant. *Bosworth* v. *Pomeroy*, 112 Mass. 293; *Davenport* v. *Tilton*, 10 Met. 320; *Bates* v. *Tappan*, 99 Mass. 376; *Stockwell* v. *Silloway*, 113 Mass. 382; *Johnson* v. *Collins*, 116 Mass. 392; *Leighton* v. *Kelsey*, 57 Maine, 85; *Bowman* v. *Harding*, 56 Maine, 559.

When the defendant died the property attached was not a part of his estate, and his estate was in no way liable for the debt in suit. Judgment could not be rendered against his estate if solvent, and this claim cannot be proved against his insolvent estate. The property attached cannot be held by the administrator as assets of

the estate, and it is wholly immaterial to creditors, heirs, or anybody else interested in his estate, whether this attachment is dissolved or not. If dissolved, the purchaser or purchasers of the property at the assignee's sale, and those claiming under them, reap the benefit. It gives to these purchasers and those holding under them, something which they never bought or paid for, and which was expressly excepted from their purchases, as the sale by the assignee to them was subject to this attachment.

If the attachment is dissolved, the estate gets no benefit, and this plaintiff can prove no claim against the estate; neither can it share in the assets, even though they prove to be more than sufficient to pay every debt in full. Can it be possible that the legislature intended by this act to place it in the power of the administrator of an estate, by filing a representation of insolvency, arbitrarily to transfer large property interests, where his estate is in nowise interested?

The facts in *Bullard* v. *Dame*, 7 Pick. 239, and *Ridlon* v. *Cressey*, 65 Maine, 128, differ materially from those in the case at bar.

No bankruptcy intervened in those cases.

*J. Williamson, S. S. Hackett and J. W. Manson,* for defendants.

Foreclosure valid: The paper is proved to have been "printed" in Kennebec county. The statute requires no more. The three Maine cases cited by plaintiff show there was an entire lack of evidence that the newspaper was printed in the county, the parties setting up that foreclosure depended upon the certificate alone. We have introduced other evidence sufficient to prove the only fact lacking from another source.

The certificate is evidence and fixes the first date of publication Nov. 17, 1876 ; the certificate says that this is the third publication, that the paper is published weekly, and that the third publication is in a paper dated Dec. 1, which we have shown by affidavit admitted by agreement was published one or two days earlier. The court will take judicial notice of days of the week and month ; so it is plain to be seen that Nov. 17 to Nov. 29 or 30th is "three weeks successively." Twenty-one days is not required. *Wilson* v.

*Page,* 76 Maine, 279; *Stowe* v. *Merrill,* 77 Maine, 550; *Chase* v. *Savage,* 55 Maine, 543.

We say that the notes sued upon have been paid in full. At the time the bank began foreclosure proceedings, Nov. 17, 1876, the first three notes and one year's interest on all the notes was all that was due. The value of the property foreclosed upon in Nov. 1877 should be applied to pay this interest due on all the notes and the three notes due Nov. 17, 1876; the value of the property $11,000 was a great deal more than enough for this purpose, and we feel that this question of so applying that payment is not now an open one, either in this state or N. H. but has been decided. *Hunt* v. *Stiles,* 10 N. H. 466; *Larrabee* v. *Lumbert,* 32 Maine, 97.

Under the rules of appropriation of payment, the creditor has applied the payment made by foreclosure by his own act to the notes and interest due when foreclosure was begun. And more than that, if he had not so applied it, the law does. Cases, supra.

Attachment is dissolved: The statute has been construed to mean what it said and dissolved the attachment, whatever changes to title had been since the attachment had taken place. *Bullard* v. *Dame,* 7 Pick. 238; *Coverdale* v. *Aldrich,* 19 Pick. 391; *Day* v. *Lamb,* 6 Gray, 523; *Wilmarth* v. *Richmond,* 11 Cush. 463; *Parsons* v. *Merrill,* 5 Met. 356; *Ridlon* v. *Cressey,* 65 Maine, 128.

And that our legislature knew what they were doing in 1876, when they repealed the construction of 1875, cannot be doubted.

The enactment of the act of 1875 and its repeal in 1876 showed that the very question we are discussing was considered by the legislature of 1876; so that the plaintiff cannot now say that the case was within the letter but not the spirit of the law.

For a history of this law of dissolving attachment, see Laws of Maine, vol. 1, c. 60, § 32; *Martin* v. *Abbot,* 1 Greenl. 333. R. S., 1857, does not appear to have this provision but it is added in 1869, Laws of 1869, c. 37; R. S., 1871, c. 81, § 65; R. S., 1883, c. 81, § 68; *McNally* v. *Kerswell,* 37 Maine, 552; *Bowley* v. *Bowley,* 41 Maine, 545.

Furthermore, if the plaintiff ever could have made an attach-

ment that would survive the death and insolvency of defendant, the legislature had a right by repealing it to change this, the attachment being a remedy provided for enforcing the contract and not a part of the contract. *Bigelow* v. *Pritchard*, 21 Pick. 169; *Geer* v. *Horton*, 159 Mass. 259; *Owen* v. *Roberts*, 81 Maine, 439.

SITTING: PETERS, C. J., EMERY, HASKELL, WISWELL, SAVAGE, JJ.

WISWELL, J. On February 15, 1875, the Belfast Savings Bank loaned to William K. Lancey the sum of ten thousand dollars, for which Lancey gave to the bank his five promissory notes for two thousand dollars each, the first payable in six months time and the others respectively at intervals of six months thereafter, with interest payable semi-annually, secured by a mortgage upon real estate situated in Augusta.

After three of these notes had become due, on November 11, 1876, this action was commenced upon the first two notes that matured, and an attachment made thereon, November 13, 1876, of all of the real estate and interest therein which Lancey had in Somerset county. On November 17, 1876, the plaintiff commenced, or attempted to commence, a foreclosure of the mortgage given to secure these five notes, by publishing on that day a notice of foreclosure in a newspaper.

On April 13, 1878, considerably more than four months subsequent to the attachment of his real estate in Somerset county, above referred to, Lancey filed his voluntary petition in bankruptcy in the U. S. District Court for this district; he was subsequently adjudged a bankrupt and an assignee was duly appointed who, on May 21, 1885, in pursuance of a license granted by the District court, sold the real estate attached upon the writ in this suit, subject to the attachment. On June 2, 1879, Lancey was duly granted a discharge by the District court from all debts provable against him in bankruptcy.

William K. Lancey died,—the exact date is not stated,—within one year prior to the April term, 1899, of this court in Waldo

county.  Letters of administration were duly granted by the probate court in Somerset county, which court had jurisdiction of his estate; and at the January term 1899, of the probate court in that county, the estate of Lancey was duly adjudged and decreed insolvent and commissioners in insolvency appointed.

At the January term 1899, in Waldo county, the plaintiff's counsel filed a motion setting out the fact of the attachment of real estate upon the writ, specifically describing the different parcels of real estate that were thereby attached, the bankruptcy proceedings above referred to, and asking to have the amount due upon the notes in suit determined and that it might have special judgment therefor and execution against the property attached.  By agreement of the parties, the question of what was the fair market value of the real estate described in the plaintiff's mortgage, on November 17, 1877, was submitted to the jury, who found that such value on that day was eleven thousand dollars.  The case was then reported to this court to determine the rights of the parties.

The counsel for the defense assigns several reasons why the plaintiff should not have the judgment he asks for.  He claims that a foreclosure of the mortgage by publication was commenced on November 17, 1876 ; that by operation of law and in pursuance of an agreement to that effect contained in the mortgage, the mortgage became fully foreclosed in one year therefrom ; and that the value of the mortgaged premises, as ascertained by the jury, although not sufficient to satisfy the entire mortgage debt at that time, should be applied in payment of the three notes that were due at the time the foreclosure was commenced and in payment of the interest due at that time upon all of the notes : such an application would much more than pay the two notes sued in this action.

This involves the question as to whether the proceedings commenced by the bank on November 17, 1876, for the purpose of foreclosing the mortgage, was sufficient for that purpose.  The notice of foreclosure was published in a newspaper that was both printed and published in the county where the mortgaged premises were situated, but the certificate of the register of deeds reads:

"Received Nov. 30, 1876, and copied from the Maine Standard, a public newspaper, *published* weekly at Augusta, Maine;" etc. The statute in force at that time required a mortgagee who desired to foreclose his mortgage by publication, to give public notice in a newspaper *printed* in the county where the premises are situated, if any. This certificate does not state that the newspaper referred to was printed in that county.

This court has in several instances decided that such a certificate was fatally defective. *Blake* v. *Dennett*, 49 Maine, 102; *Bragdon* v. *Hatch*, 77 Maine, 433; *Hollis* v. *Hollis*, 84 Maine, 96. But it is urged in behalf of the defense that these cases are not conclusive because this case differs from those cited in this respect; that here the newspaper was in fact printed in the county; and it is claimed that this fact may be shown, by parol evidence, that the statute does not require any certificate from the register of deeds, but only makes it prima facie evidence of the facts stated.

We do not think it necessary to determine this question, in which others, not parties to this action, and not bound by the decision of the case, are especially interested, the bank having conveyed the mortgaged premises a number of years ago, because, in our opinion, there is another reason why the plaintiff is not entitled to the special judgment he asks for against the property attached.

The plaintiff does not claim that it is entitled to a general judgment against the estate of Lancey. The bankruptcy proceedings already referred to are a bar thereto, but it desires a special judgment and execution thereon against the property attached more than four months prior to the time of the filing of the petition in bankruptcy. This he would have been entitled to, *Bowman* v. *Harding*, 56 Maine, 559, *Leighton* v. *Kelsey*, 57 Maine, 85, except for the death of Lancey and the decree of insolvency upon his estate.

The only reason why the plaintiff should have a special judgment against the property attached upon the writ is, that it has at the time of such judgment a valid and subsisting attachment of the property, unaffected by any subsequent proceeding. Does the attachment made upon the writ in this case still exist so as to create

a valid lien upon the property attached? We think not. By R. S., c. 81, § 68, "all attachments of real or personal estate are dissolved by final judgment for the defendant; by a decree of insolvency on his estate before a levy or sale on execution;" .  .  .  .  etc.

In this case, as we have seen, there has been a decree of insolvency upon the estate of the original defendant, made before judgment; such decree, by the express terms of the statute, dissolves "all attachments" previously made of his real or personal estate.

The plaintiff's counsel argues with much force that the object of this statute is that in the case of the insolvency of the estate of the deceased person, his whole estate may be used as assets for ratable distribution among all of his creditors, but that under the circumstances of this case, the property attached does not belong to the estate and cannot in any event be taken by the administrator for a proportional distribution among creditors; and that consequently there is no reason why the attachment should be dissolved; and that the legislature could not have intended that the terms of the enactment should apply to the circumstances of this case.

The very plausible and strong reasons given by the counsel why the statute should not apply to a case, like this under consideration, might be considered by the legislature as sufficient to require its modification in some respects by legislative enactment; but the matter is wholly within the province of the law making department of the government. We can not disregard the plain and unequivocal terms of the section referred to. This is especially true when we consider the judicial construction which the statute has already received, and the history of legislative action relative to the subject matter.

A similar statute was in force in Massachusetts when the case of *Bullard* v. *Dame*, 7 Pick. 239, was decided in 1828. In that case the real estate attached had been conveyed by the defendant subsequent to the attachment. Pending the action the defendant died and his estate was adjudged insolvent and commissioners in insolvency appointed. The property attached could not be taken by the administrator for general distribution among creditors, and the

reasons why the statute should not be regarded as applicable were as strong in that case as in this; but the court held that according to the terms of the statute the attachment was dissolved by the decree of insolvency.

In *Ridlon* v. *Cressey*, 65 Maine, 128, the real estate of the defendant was attached on the writ and was subsequently conveyed by the defendant; before judgment for the plaintiff the defendant died and his estate was later decreed insolvent. The plaintiff, as in this case, sought a special judgment against the real estate attached because of the attachment, because the defendant had no title or interest therein at the time of his death, and the property would not become assets of the estate for distribution among his creditors; but the court decided that, "the decree of insolvency dissolved the attachment."

In *Grant* v. *Lynam*, 4 Metc. 471, a different but somewhat similar, statute was under consideration, and the court came to a similar conclusion as to its effect. A debtor whose goods were attached, mortgaged them to another creditor, he then applied for the benefit of the insolvent act, and all his estate was thereupon assigned under the statute    It was urged in behalf of the existence of the attachment, that the only purpose of dissolving the attachment must have been to let in the general creditors to the proceeds of the attached property; and that, unless the property was so situated that the assignee could obtain it, the reason for dissolving the attachment would not exist. The court, in its opinion, expressed the belief that it could not have been the purpose of the legislature to dissolve the prior attachment of one creditor in order to let in the subsequent mortgage of another creditor, and that it was probably a case that was overlooked by the legislature; but the court held that the attachment was dissolved, saying: "But yet the words of the statute are positive and explicit, that it shall dissolve the attachment without condition or qualification."

We have already spoken of the history of legislation upon this subject. It must be considered as throwing considerable light upon the purpose of the legislature.

The legislature of 1875, public laws 1875, c. 39, modified this

statute so as to make it precisely as the plaintiff's counsel thinks it ought to be. The first section of that chapter provided that the portion of the statute, which we have been considering, should be understood and construed to apply to such property as the debtor owned, or in which he had an interest at the time of his death, and which, by the dissolution of such attachments, become assets belonging to his estate, to be distributed among his creditors. The second section of this chapter was as follows: "When property has been legally attached on a just debt or claim, and the debtor subsequently sells or conveys the same, subject to such attachment, such attachment shall not be dissolved or affected by his death or by a decree of insolvency in the probate court, but judgment may be entered and execution issue in the same form as if the estate was solvent, and may be levied upon the property attached in the same manner as if the debtor were alive."

The terms of this chapter were so full as to disclose, not only the intention of the legislature, but the reasons, as well, which actuated the passage of the amendment: the first section contained almost an argument in its favor. But the succeeding legislature, by an act c. 143, approved February 23, 1876, some months before the commencement of this suit, repealed c. 39 of the public laws of 1875 without qualification.

We are, therefore, forced to the conclusion that the plaintiff's attachment was dissolved by the decree of insolvency upon the estate of the original defendant, and that consequently it is not entitled to a special judgment against the property attached.

*Case remanded to the court at nisi prius for*
*disposal in accordance with this opinion.*